# Marcus, Appellant, v. Heralds of Liberty.

*Beneficial associations—Character of business—Conflict of laws —Certificates of membership—Insurance—Insurance policies—Act of May 11, 1881, P. L. 20—By-laws.*

1. The character of the business transacted in Pennsylvania by a beneficial association incorporated under the laws of Alabama, when the subject of judicial inquiry in Pennsylvania, is to be determined according to the law of Pennsylvania, and the law of Alabama does not apply.

2. In an action of assumpsit upon certain certificates of membership in a so-called beneficial association to recover death benefits as provided therein, the defense was that the deceased member had committed suicide, and that payments in such case were prohibited by the by-laws of the association, which were incorporated by reference in the certificates, but were not attached thereto or printed therein. It appeared that the payment of definite sums was pro-

vided in the certificates, which were called "policies" in circulars and advertisements issued by defendant, that applications for membership contained questions and stipulations usual in applications for life insurance, and that in other ways the insurance features of the association's activities were emphasized, and but little attention was paid to the social or benevolent features: *Held,* that the business of such association was a life insurance business and the certificates were in law life insurance policies, and defendant was precluded from setting up the defense of suicide, and from offering the by-laws in evidence as part of the contract, by the Act of May 11, 1881, P. L. 20, providing that by-laws referred to in insurance policies as part of the contract shall be contained therein or attached thereto, otherwise they shall not be received in evidence, or be considered a part of the policy in any controversy between the parties.

Argued April 2, 1913. Appeal, No. 371, Jan. T., 1912, by plaintiff, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1910, No. 2015, for defendant non obstante veredicto in case of Yetta Marcus v. The Heralds of Liberty, a Corporation under the Laws of Alabama. Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit on certificates of membership in a beneficial association. Before STAPLES, P. J., specially presiding.

From the record it appeared that Herman D. Marcus held five membership certificates in the Heralds of Liberty, an Alabama corporation, under each of which there was payable $500 at his death to his wife, Yetta Marcus, the plaintiff. Each certificate contained this printed clause:

"This certificate is issued to and accepted by the holder hereof, subject to the laws, rules and regulations of this society, which are hereby referred to and made a part of this contract."

The laws, rules and regulations of the society provided:

"Section 88. No benefits shall be paid on account of

death...................from suicide whether sane, or insane,......." This clause was not printed on the certificates.

On June 16, 1910, Herman D. Marcus committed suicide by taking poison. Other facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $2,750. The court subsequently entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant n. o. v.

*Paxson Deeter,* with him *Samuel W. Salus* and *John C. Bell,* for appellant.

*George J. Edwards, Jr.,* for appellee.

OPINION BY MR. JUSTICE ELKIN, June 27, 1913:

It is the settled rule of our cases that a certificate of membership of a beneficial association is not an insurance policy within the meaning of the Act of 1881, so as to make its by-laws inadmissible in evidence although not attached to the certificate: Beatty v. Supreme Commandery, 154 Pa. 484; Dickinson v. A. O. U. W., 159 Pa. 258; Lithgow v. Maccabees, 165 Pa. 292. It is the contention of appellee that these cases rule the one at bar, and it must be conceded that if the certificate sued on is that of a purely beneficial association, and not a contract of insurance, this position would be unanswerable. But this is the pinch of the case. If the certificate of membership was in effect a policy of life insurance which upon its face contained no provision, stipulation or condition as to suicide, the policy will not, if the insured commits suicide, be avoided as against the wife of the insured, who was named as beneficiary: Morris v. Mutual Assurance Co., 183 Pa. 563. The first question for decision here is whether the contract in question

is a membership certificate of a beneficial association, or is in legal effect a policy of insurance. Appellee contends that under the facts of the present case this question cannot be raised because it is in the nature of a collateral attack upon the charter powers of a foreign corporation. This position is asserted upon the ground that the defendant association was incorporated under the laws of the state of Alabama as a beneficial society, and that any one desiring to attack the character of the business transacted under the charter powers must do so by an appropriate action in the courts of the domicile of the association. This raises an interesting question and one concerning which there is no conclusively adjudicated case in our own State; and about which the authorities in other states are at variance. The following are cases holding that the rights of beneficiaries under membership certificates in a beneficial association are to be determined by the laws of the domicile of the corporation: Franklin Ins. Co. v. Morrell, (Ark.) 106 S. W. Rep. 680; Order of Protection v. Hine, (Conn.) 73 Atl. Rep. 791; Keatley v. Grand Fraternity, (Del.) 82 Atl. Rep. 294. But it should be observed that in these cases it was expressly held that the domicile of the corporation was the place of the contract, and this was the controlling factor in the decisions.

On the other hand, as we read the decisions from other states, the overwhelming weight of authority is to the effect that the character of the business done by a so-called beneficial association is to be determined by the laws of each state in which it transacts business, and not by the laws of the state of its domicile. To this effect see: State v. Mutual Aid Association, 35 Kans. 51; MacDonald v. Baikers Life Association, 154 Mo. 618; Dolan v. Supreme Council, 113 N. W. Rep. 10; (Mich.); Coverdale v. Royal Arcanum, 61 N. E. Rep. 915, (Ill.); Pringle v. Woodmen of America, 127 N. W. Rep. 876, (Neb.); Green v. Royal Arcanum, 124 N. Y. Suppl. 398. An examination of those cases which held

that the character of the business transacted was determined by the laws of the domicile of the corporation will show that the association bore the same character in the state where it was doing business as in the state of its domicile. In most of these cases the character of the business transacted was determined as a question of fact under the evidence, rather than as a matter of law depending upon the authority of the state where the association was incorporated. After an examination of numerous cases, not only in our own state but in many other jurisdictions, we have concluded that the great weight of authority sustains the contention of appellant in the present case in respect to the question just discussed. This means that the character of business transacted by beneficial associations is to be determined by the law of the state where they do business and in which the contract was made, and not by the law of the state of the domicile of the foreign corporation which executed the contract. It necessarily follows that the character of the contract represented by the certificate of membership involved in the present suit is to be determined under the facts established by the evidence produced at the trial according to the law of our own State. But it is argued with much force that even if the law of Pennsylvania prevails, the question is decided adversely to the contention of appellant by Com. v. Equitable Beneficial Association, 137 Pa. 412. Mr. Justice CLARK who wrote the opinion in that case pointed out as clearly as any one could the distinction between a membership certificate of a beneficial association and a policy of insurance. But no general rule can be laid down which will be decisive of every case. The character of business transacted must be determined by the facts, although the presumption is that the business is what the association declares it to be. But this is prima facie only and may be overcome by the evidence. In that case a writ of quo warranto was awarded upon the suggestion of the attorney general against the defendant cor-

poration, calling upon it to show by what authority it claimed the right to issue policies of insurance. The case was practically disposed of on the pleadings and there were no findings of fact to show the character of the business transacted. The court below decided in favor of the Commonwealth and our court reversed with a procedendo, saying: "We are wholly without information as to the business in which the defendants are engaged: there is no finding that they are making any contracts of insurance, or issuing policies in pursuance thereof; or, indeed, that they are engaged in any business at all." It will therefore be seen that this court reversed that case with a procedendo for the very purpose of giving the Commonwealth an opportunity of establishing by competent evidence the character of the business transacted. In awarding a procedendo there was a plain implication that evidence might be admitted to sustain the contention of the commonwealth, else it would have been a futile thing to prolong the litigation. It is true this court did point out the difference between a beneficial association and an insurance company, and there is no disposition to make a departure from the rule and reason of that case. But after all, what was there said was intended as an aid and guide to the profession in the trial of such causes, and must not be considered as conclusive in every case when a beneficial association issues a certificate of membership, regardless of its method of conducting business and the nature of the contract entered into. The character of the business entered into in the very nature of things must depend upon the facts of the particular case, or, more accurately speaking, of the kind and character of business done by a particular association whose contracts are the subject of judicial inquiry. This makes it necessary to inquire as to the character of the business transacted by the defendant association in the case at bar. We begin with the application for membership, which under the head of the style of certificate gives the applicant the elec-

tion to choose either an ordinary life certificate, or an ordinary limited annuity, an ordinary whole life annuity, a participating limited annuity, a participating whole life annuity, or an R. F. D. The premium is fixed at a definite sum payable monthly. The applicant is required to state in what other organization his life is insured, and whether any application for insurance has been postponed or rejected. All of the questions follow in the line of applications for insurance risks as to physical condition, health and habits. The certificate provides for the payment of a definite sum to the beneficiary at the death of the insured. In addition it is provided that if the insured attain a certain age the amount of the certificate shall be paid to him in fifty equal monthly installments or annuities. There are other alternative provisions following closely the method adopted by insurance companies for the payment of such risks. By the way of advertising, circulars are issued calling attention to the insurance features of the association. In one of these circulars attention is called to what is designated "a new popular idea in life insurance—you do not have to die to win—if you die you win—if you live you win." In other circulars these certificates are spoken of as policies. Indeed, after a careful reading of all the evidence presented by this record we discover that but little attention is paid to the social, fraternal and benevolent features of the order; but, on the other hand, the plan of organization, the method of soliciting business, the emphasizing of the advantages of being insured, the minimizing and in large areas the elimination of the lodge system, and numerous other like features, all point to but one end, which is, that under the guise of a beneficial association, defendant is doing an insurance business. No matter by what name called the result is the same.

The law looks to the substance rather than to the form, and is not to be cheated by any gloss of words. The declared objects of the order may have been Jacob's

voice, but the hands were the hands of Esau. Deputies and agents were appointed to solicit business and were paid large commissions as an incentive to quicken their efforts in increasing the volume of business. Colonel Barrick, who was the supreme recorder of the order, admitted on the stand that the main business of the supreme lodge was the issuing of life insurance policies. The figures upon which the premiums are fixed are based on the mortality tables just as in old line companies; and if the premiums are not paid, the certificates lapse. Its active officials are paid large salaries; premiums are paid for bringing in new business; and membership is made to depend upon the condition of health and probable duration of life of the applicant. There are many other features of the order which plainly indicate that insurance rather than fraternity and benevolence is the predominating characteristic of the purpose and object of the association. Upon its insurance features the case at bar is certainly as strong as Com. v. Keystone Benefit Assn., 171 Pa. 465. In some respects what was said in White v. Empire State Degree, 47 Pa. Superior Ct. 52, applies to the present case. We approve of what was said in that case by the learned judge who wrote the opinion of the Superior Court.

Without pursuing the discussion further, it only need be said that we regard the business transacted by the defendant order in Pennsylvania as that of life insurance, and hence failure to attach the by-laws to the certificate defeats the right of the order to set up the defense of suicide, or any other defense not stipulated in the certificate sued on. This is the legal effect of the Act of 1881.

Judgment reversed and is here entered for plaintiff on the verdict.