## Leiterman, Exr., Appellant, v. Polish National Alliance of United States of North America.

Argued December 9, 1943. Before KELLER, P. J.,
BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*Jos. Ginsburg,* for appellant.

*Sidney E. Smith,* with him *Stephan T. Potok,* for appellee.

OPINION BY KENWORTHEY, J., January 27, 1944:

The only issue tried in the court below, and, for reasons we shall presently point out, the only question here, is whether defendant is a fraternal organization or whether it is, in fact, carrying on a general insurance business.

Defendant is the Polish National Alliance of The United States of North America, a non-profit corporation organized and existing under the laws of Illinois. Siuda became a member in 1906. He was a member in good standing when he died in 1938. The certificate of insurance issued to him named his wife as beneficiary. She predeceased him. Defendant paid the death benefits to Siuda's sons, as next of kin. His executor brought this action, claiming the fund is payable to the estate.

The case was tried before Judge KNOWLES and a jury, and resulted in a verdict for defendant. Plaintiff filed motions for new trial and for judgment n.o.v. which were refused. He thereupon took this appeal.

Although there is a dispute about it, the docket entries indicate that, at the oral argument before the court en banc, plaintiff stated he was not pressing his motion for new trial. Several assignments of error are directed to alleged errors in the trial judge's charge and at rulings upon the admission and the exclusion of evidence. But we cannot consider the motion for new trial. The docket entries are a part of the record and we are bound by them; if the record is erroneous,

the plaintiff's remedy was by a petition to the court below to alter it. *Woodward & Williamson's Assessment,* 274 Pa. 567, 118 A. 552.

It is conceded that, if defendant is a beneficial association, the plaintiff has no right to recover because the payment to the next of kin was, in accordance with its by-laws. It is also conceded that, if it is engaged in a general insurance business subject to the Act of May 17, 1921, P. L. 682 art. III, §318, 40 PS §441, plaintiff is entitled to recover because the by-laws, a copy not having been attached to the certificate, are not a part of the contract and payment should have been made to the estate. *Hatfield v. Sov. Camp W. O. W.,* 129 Pa. Superior Ct. 570, 196 A. 904.

"The law looks to the substance rather than to the form, and is not to be cheated by any gloss of words. The declared objects of [defendant] may have been Jacob's voice, but the hands [were] the hands of Esau." (Paraphrasing Justice ELKIN in *Marcus v. Heralds of Liberty,* 241 Pa. 429, 435, 436, 88 A. 678).

But we agree with the court below that the evidence clearly establishes that defendant was, in truth, a beneficial association and not, as in the *Marcus* case, doing an insurance business under the guise of a beneficial association; the case resembles *Lafferty v. Supreme C. C. Mutual B. Assoc.,* 259 Pa. 452, 103 A. 280.

The underlying purpose of the Alliance, as declared in the Preamble to its Constitution, is patriotic; its membership is limited to persons of Polish extraction. It functions through subsidiary groups organized throughout the country, which send delegates or representatives to a central governing body called a Convention. There are three classes of membership: (1) insured, (2) uninsured, and (3) honorary. New members are procured by solicitation and by introductions from old members. There is no advertising for new members and there is no evidence that commissions

are paid for procuring new members. According to the by-laws, the application for insured membership must be signed by two members and accompanied by the payment of an initiation fee of $2. A committee of three members of the group is then appointed to conduct a thorough investigation of the character, mode of living, occupation, home conditions, family relations and past sicknesses of the candidate. If the report of this committee is favorable, the name of the applicant is submitted to the group and he may be elected by a vote of the majority of those present. After a candidate is accepted as a member, he is required to submit to a physical examination and comply with other requirements for insurance.

The candidates for uninsured membership are subject to the same conditions of admission as insured members with the exception that they need not submit to a medical examination and the initiation fee is 25¢. The evidence discloses that, in addition to insuring the lives of some of its members, the Alliance engages in a number of other activities. It operates a Junior College in Cambridge Springs, Pa., where sons of needy Alliance members receive an education; it provides around $10,000 worth of scholarships in other universities; since the outbreak of the war it has turned over to the American Red Cross $155,000; and it publishes a newspaper which, for a nominal charge of 30¢ per year, it circulates among the members. Its avowed purposes are "to advance its members morally, socially and intellectually and to develop patriotism among the members thereof."

This evidence scarcely describes the pattern of activities of an insurance company.

The judgment is affirmed.